Affirmed and Opinion on Remand filed February 4, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00390-CR

____________

 

ARSENIO CARLOS CLARKE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th District Court

Harris
County, Texas

Trial Court Cause No. 1021640

 



 

O P I N I
O N   O N   R E M A N D 

Appellant asserts that the trial court abused its discretion
by denying his motion for new trial based on appellant’s contention that the prosecutor
violated the United States and Texas Constitutions by deliberately deceiving
the trial court during the punishment phase. Appellant alleges the prosecutor allowed
evidence concerning an extraneous offense to remain in the pre-sentence
investigation report, even though the prosecutor allegedly knew that this
evidence was false.  We affirm. 

I.  Factual and Procedural
Background

In December 2004, appellant moved to Texas from New York to
live with the family of the child complainant, T.M., a fourteen-year old girl. 
Appellant is the nephew of T.M.’s step-father.  T.M.’s mother and step-father
had agreed to help appellant improve his life by allowing him an opportunity to
move in with their family and work in their family business. 

While living in his uncle’s home, appellant shared a bedroom
with T.M.’s brother. One day, T.M. walked into her brother’s bedroom, where
appellant was playing a video game.  Appellant got up, closed the bedroom door,
and began to wrestle with T.M.  After a few moments, appellant pushed T.M. onto
a mattress that was on the floor.  While holding T.M. down, appellant removed
their clothing, and forced T.M. to engage in sexual intercourse.  When he was
finished, appellant stood up, got dressed, and shrugged at T.M.  T.M.
immediately ran to her own bedroom.  Too scared to tell her mother or step-father
about the incident, T.M. decided that she would handle the matter by herself. 
Approximately five days later, T.M. attempted to confront appellant and tell
him that he could not engage in sexual intercourse with her, but he again
sexually assaulted her.  After the second assault, T.M. again remained silent,
and tried her best to avoid appellant.  

On Super Bowl Sunday of 2005, T.M. was watching television in
her bedroom, while the rest of the family watched the game in the family room. 
Appellant walked into T.M.’s bedroom, closed the door, and locked it. 
Appellant laid down on the floor and told T.M. that he wanted to watch the game
with her.  T.M. told him, “no,” and tried to get him to leave.  Appellant, who
was much stronger than T.M., forced her against the wall, and again forced her
to engage in sexual intercourse.  When he was finished, appellant got up and
left the room.  T.M. closed her bedroom door and locked it.  








Several days later, T.M. went looking for her brother in his
bedroom.  Appellant was there, and her brother left the room.  Appellant closed
the door, sat T.M. down on the mattress, and began to whisper to her.  T.M. got
up and tried to open the bedroom door to leave.  T.M.’s step-father was
standing outside the door, and he asked T.M. what they were whispering about. 
T.M. finally told her step-father about the incidents.  T.M.’s step-father
called T.M.’s mother, who immediately came home.  Initially, T.M. had a
difficult time telling her mother about the incidents.  Eventually, however,
T.M. recounted some of the things that appellant had been doing to her. T.M.’s
mother was furious and confronted appellant.  Appellant told her that the
sexual intercourse was consensual.  T.M. was taken to a hospital to be
examined. 

Appellant was arrested and charged with the felony offense of
sexual assault of a child.  He pleaded “guilty” without an agreed
recommendation from the State.  The trial court found appellant guilty of the
charged offense and ordered a pre-sentence investigation  (“PSI”) report.  At
the beginning of the sentencing hearing, the trial court asked appellant if he
had reviewed the PSI report and gone over it with his attorney.  Appellant
stated that he had done so.  The trial court asked appellant’s counsel if he
knew of any errors in the PSI report.  Counsel stated that he and his client
had “no problems” with the PSI report, except for the “conjecture on behalf of
the victim’s mother.”  Counsel was referring to the following part of the
victim impact statement in the PSI report:

[The complainant’s mother] reported her niece, sister
of the defendant, called her the day she took the complainant to the hospital. 
She reported her niece lives with her grandmother in New York, not with her
mother.  She stated her niece was very apologetic about her brother and stated
she hated him for what he had done to the complainant.  [The complainant’s
mother] stated she had an intuition that perhaps the defendant’s sister had a
similar experience with her brother, but was afraid to relate the experience to
anyone.

 

 

The trial court accepted the PSI report as submitted and then
heard testimony.  The complainant testified that appellant came from Brooklyn
to live with her family in 2004 to help her step-father and her mother with
their business.  She said that he sexually assaulted her three times:  the
first two incidents were in her brother’s room, and the third was in her own
room.  Her step-father, who had overheard appellant and the complainant whispering,
asked about the whispering, and the complainant told him what had been
happening.  Appellant told the parents that the sex was consensual, but they
believed the complainant, who said that it was not.

The complainant’s mother testified that she let appellant live
with them because she had “heard that he had gotten into some trouble.”   But “it
wasn't something he did and I guess the case was dismissed.  And he needed to
get out of New York to have a new chance.”  She was prepared to let him stay
there until he could “get himself back on his feet.”  She trusted him because he
was family.  When she found out about the assaults, she took the complainant to
the emergency room and contacted the police.

The complainant’s step-father testified that, when he found
out about the assaults, he literally threw appellant out of the house. 
Nevertheless, he thought probation would be appropriate, in part because his
nephew was “still a young man beginning his life.”

Appellant’s step-father, Ricardo Buchanan, testified for
appellant.  He said that he learned about the assaults when appellant came back
to New York.  Appellant admitted that he had had sex with a minor; he never
denied it.  Buchanan thought that appellant could comply with probation
conditions.  

Appellant testified that he was back living in Brooklyn.  He
acknowledged that he’d “made a big mistake" by having “sex with a minor.” 
He apologized.  He said he told the PSI report writer that his mother was
initially worried about him being around his little sister because of the case,
but that he still baby-sat his little sisters and brother.  Appellant testified
that he did not force himself on the complainant and that he had sex with the
complainant twice rather than three times.  Appellant stated that each time
that he had sex with the complainant it was because she approached him. 
According to appellant, the complainant asked him to have sex with her. 
Appellant said that he smokes marijuana about every two days, and continued to
do so following his arrest in this case.

Defense counsel then asked for probation, and the State asked
for imprisonment.  The trial court then stated the following:

I’ve reviewed the presentence
investigation report and all the submissions as well as heard the testimony
from both the State and the defense.  And one of the things that you said is
that essentially she asked you for sex and you — and you’re the one that
obliged her, is essentially the way it came out.  The fact is is that you’re 21
years old.  And if a 14-year-old asks you for sex, it’s just —it’s your — it’s
rape.  There’s no other way to put it other than rape.

            22 years old, you didn’t have a job.  They
gave you a job. Two kids in New York that you can’t support.  And the most
troubling thing is you want — is that — you know, if you really felt it was
wrong, you wouldn’t have done it three times.  You wouldn’t have done it
twice.  Not only — I mean, not once, but twice then a third time.  And I’m
sorry, but that is — that’s — she’s a 13-year-old girl.  Probably the most
vulnerable time in her life is right now.  And I can only imagine the
destruction that you’ve caused with your own selfishness.

            And I respectfully disagree with your
attorney.  I don’t think that probation is at all appropriate on the facts that
I’ve heard.  And I think that you should go to prison for what you’ve done. 

 

The trial court then sentenced appellant to ten years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.  

Appellant filed a motion for new trial asserting that the PSI
report “contained totally unfounded allegations from [the complainant’s mother],
that the Defendant had molested his own sister.”  Appellant attached an
affidavit from his sister, Chyva Clarke.  In this affidavit, Chyva noted the
complainant’s mother’s statement in the PSI report that Chyva told her that
Chyva “hated [appellant] for what he had done to the complainant.”  In her
affidavit, Chyva stated that she never said that she hated appellant.  Chyva
stated that she does not condone what appellant did but that she loves him and
she does not think he should have been sentenced to prison.  Chyva testified
that her brother had never done anything inappropriate with her, sexually or
otherwise.  She also said:  “I hardly know [the complainant’s mother].  For her
to have any ‘intuition’ about me, or about my relationship with my brother, is
very presumptuous.”  In his motion, appellant alleged that: (1) his counsel was
not timely given the PSI report resulting in a denial of effective assistance
of counsel, (2) he was denied his right to effectively confront the witness
used against him, and (3) the alleged extraneous offense was inadmissible
because it was not proven beyond a reasonable doubt.  Although appellant
requested a hearing, the trial court denied this request.  

When the case reached this court on appeal, we concluded that
appellant timely filed and presented his motion for new trial alleging
ineffective assistance of counsel and that a hearing was necessary to develop
the facts supporting these claims.  Therefore, we abated the appeal so that the
trial court could conduct a hearing on the motion for new trial.

On abatement, the trial court conducted an oral hearing on
the motion for new trial.  At that hearing, however, appellant alleged, for the
first time, that the prosecutor knew that the information regarding the alleged
extraneous offense was false before the sentencing hearing, and thus had a duty
to inform defense counsel of this exculpatory evidence, namely the falsity of
the statements regarding this alleged extraneous offense. 

On original submission, appellant asserted that the trial court abused its discretion by denying his motion
for new trial.  However, appellant did not base this argument upon any ground
in his written motion for new trial.  Instead, appellant based his argument
upon (1) an alleged due process violation under Mooney v. Holohan, 294
U.S. 103, 112–13, 55 S. Ct. 40, 79 L.Ed 791 (1935) and its progeny (“Mooney
violation”); and (2) an alleged due process violation under Brady v.
Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)
and its progeny (“Brady violation”).[1] 
This court held that appellant failed to preserve error because (1)
appellant did not assert this complaint in his motion for new trial and he
never amended this motion; and (2) even if appellant’s arguments at the hearing
on the motion could be considered, appellant did not assert the same complaint
at the hearing as he did on appeal. See Clarke v. State, 233 S.W.3d 574,
577–80 (Tex. App.CHouston [14th Dist.] 2007), rev’d 270 S.W.3d 573, 583
(Tex. Crim. App. 2008).  The Court of Criminal Appeals granted review and
concluded that, even though no written amendment to appellant’s motion was ever
filed, the State’s failure to object to appellant’s oral arguments during the
hearing resulted in an amendment of appellant’s motion for new trial, which,
though untimely, still preserved error given the State’s failure to object. 
The high court further held that, even though appellant did not refer to any
constitution or any case involving a constitutional violation, his argument at
the hearing was sufficiently similar to his appellate complaint to preserve
error.  See Clarke v. State, 270 S.W.3d 573, 577–83 (Tex. Crim. App.
2008).  The Court of Criminal Appeals reversed this court’s judgment and
remanded for consideration of the merits of this appeal.  See id. at 583.

II. Standard of Review

        The trial judge is the trier of fact at a hearing on
a motion for new trial, and we will not disturb the judge’s findings unless an
abuse of discretion is demonstrated. Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004), superseded
in part on other grounds by Tex. R. App. P. 21.8(b), as recognized in State v. Herndon, 215 S.W.3d 901, 905 n.
5 (Tex. Crim. App. 2007).  The
appellate court does not substitute its judgment for that of the trial court,
but rather decides whether the court’s decision was arbitrary or unreasonable. Id. 
We view the evidence in the light most favorable to the trial court’s ruling,
deferring to its credibility determinations, and we presume all reasonable
factual findings that could have been made in support of the court’s ruling.  Id. 
A trial court abuses its discretion in denying a motion for new trial only when
no reasonable view of the record could support its ruling.  Id.

 

III. Issue and Analysis

Appellant presents a single issue: 

The prosecutor
deliberately deceived the trial court during the punishment phase by allowing
evidence concerning an alleged extraneous offense known by the prosecutor to be
false, to remain in the PSI report, in violation of the Fourteenth Amendment of
the United States Constitution and Article 1, Section 19 of the Texas
Constitution. 

            

          Appellant asserts that the trial court abused its
discretion by denying his motion for new trial based upon an alleged Mooney
violation and an alleged Brady violation. To establish a Mooney
violation, appellant had to show that (1) the State knowingly used certain
testimony; (2) the testimony was false and misleading to the trier of fact; and
(3) the testimony was material.  See United States v. Agurs, 427 U.S.
97, 103, 96 S. Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976); Ex parte Castellano,
863 S.W.2d 476, 479–85 (Tex. Crim. App. 1993); Ramirez v. State, 96
S.W.3d 386, 394–96 (Tex. App.—Austin 2002, pet. ref’d).  The State’s knowing
use of such testimony will be found to be material unless the court is
convinced beyond a reasonable doubt that this testimony did not contribute to
the conviction or punishment in question.  See United States v. Bagley,
473 U.S. 667, 679–80, 105 S. Ct. 3375, 3382, 87 L.Ed.2d 481 (1985); Ex parte
Castellano, 863 S.W.2d at 485; Ramirez, 96 S.W.3d at 394, 396.    

          To establish a Brady violation, appellant
had to show that: (1) the State failed to disclose evidence in its possession;
(2) the withheld evidence is favorable to the defendant; and (3) the evidence
is material, that is, there is a reasonable probability that had the evidence
been disclosed, the outcome of the trial would have been different.  Webb v. State, 232 S.W.3d 109, 114
(Tex. Crim. App. 2007).  The evidence may be material to either guilt
or punishment. Brady, 373 U.S. at 87, 83
S.Ct. at 1196–97. The State’s duty to disclose such evidence applies irrespective
of the good faith or bad faith of the prosecution, and regardless of whether the
defendant previously has requested it.  Id.; Harm v. State, 183 S.W.3d 403, 406
(Tex. Crim. App. 2006).  

          At the hearing on appellant’s motion for new trial, no live
testimony was given; however, appellant offered and the trial court admitted
six exhibits—two affidavits from the complainant’s mother, the affidavit from appellant’s
sister (Chyva Clarke) that was described above, an affidavit from appellant’s
trial counsel, a letter from appellant’s appellate counsel requesting the clerk
to prepare a supplemental clerk’s record, and a copy of the PSI report.  

          In her affidavit
of May 17, 2006, the complainant’s mother states the following:

·    She cannot excuse what appellant did to her daughter,
and it is appropriate for appellant to spend some time in jail. 

·    She believes that the ten-year sentence that the
trial court gave appellant was “much too harsh.”  

·     The complainant’s mother believes that it would be
more appropriate to put appellant on probation in May 2006, after he has served
a few months in prison.

·    Even though her daughter is the complainant, she
believes that the trial court’s ten-year sentence is too harsh a sentence in
this case for a person with no prior criminal record.  

·    Although what appellant did was wrong, having him
serve a ten-year sentence is excessive and will create a bigger problem with
appellant than there already is.  

·    As to the statement regarding her “intuition” that is
described in the PSI report, she did not make this statement or anything else
that could have been construed as a suspicion that appellant may have acted
inappropriately towards Chyva Clarke.  

·    The complainant’s mother has no reason to think
appellant acted inappropriately towards Chyva Clarke, sexually or in any other
way.  The complainant’s mother had no such “intuition,” and never said that she
did.  The complainant’s mother did not correct this when she testified at the
sentencing hearing because, at that time, she did not know of the statement
about her alleged intuition in the PSI report.  If she had been asked about
this issue, she would have explained that she never made any comment about
appellant and his sister that could be interpreted in such a way. 

 

          In her affidavit of December 5, 2006, the complainant’s mother made
some of the same statements contained in her first affidavit; however, she
added the following new paragraph:

Prior to the sentencing
hearing in this case, the prosecutor, Ms. Spalding, asked me something about
whether I knew anything about [appellant] molesting or abusing his sisters in
New York.  I replied that I knew nothing about that.  I was puzzled by the
question, but assumed that it must be something that is routinely asked in
cases like this.  However, I had no idea that in the written presentence
investigation report, I was quoted as saying that I had an intuition that [appellant]
had engaged in improper conduct with his sister.  If I had known that this was
in writing, in the report, I would have asked that it be removed.  I never said
such a thing.  I have never heard of any such behavior on [appellant’s] part
toward anyone other than my daughter.

 

          In his
affidavit, appellant’s trial counsel states the following:

·    He was not able to review the PSI report until the
morning of the sentencing hearing.  Upon reviewing the report, he noticed the
statement regarding the complainant’s mother’s “intuition.”  

·    Because the hearing was to begin shortly and because
appellant’s family lived in New York, trial counsel was unable to investigate
whether appellant committed an extraneous offense against his sister.  

·    At the beginning of the sentencing hearing, counsel
objected to this statement as being “conjecture.”

·    Because he was not sure whether appellant had engaged
in any criminal conduct against his sister in the past, counsel did not want to
draw undue attention to the statement regarding the complainant’s mother’s intuition. 


·    Counsel assumed that the complainant’s mother had
made the statement attributed to her in the PSI report.  Counsel was ready to
object to any testimony by the complainant’s mother in this regard and to
cross-examine her if this testimony were admitted.  However, the complainant’s
mother did not mention this matter during her testimony on direct examination,
and counsel thought the best trial strategy under the circumstances was not to
go into this matter on cross-examination.  

·    The prosecutor, Ms. Spalding, never told counsel that
the complainant’s mother had denied making the statement attributed to her in
the PSI report.  If the complainant’s mother had told the prosecutor that the
statements attributed to her in the report were not true, that would constitute
exculpatory information of which counsel would expect the prosecutor to inform
him that this statement was false or a mistake.  

·    Counsel was never provided with the exculpatory
information that the complainant’s mother had not made the statement attributed
to her in the PSI report.  If he had been, he would have made sure that the
trial court knew that the extraneous offense alluded to in the report was
unfounded and not to be considered in assessing punishment.

 

The State did
not present any evidence at the motion-for-new-trial hearing.

In her second affidavit, the complainant’s mother testified
that the prosecutor knew before the sentencing hearing that the complainant’s
mother did not make the statement attributed to her in the PSI report.  For
appellant to establish a Mooney violation or a Brady violation,
the trial court had to credit this testimony because it was the only evidence
at the hearing relating to the first element of each of these alleged
violations.  See Webb, 232 S.W.3d at 114; Ex parte Castellano, 863 S.W.2d at 485.  The
trial court observed the complainant’s mother’s demeanor and appearance during
her testimony at the sentencing hearing.  By denying the motion for new trial,
the trial court impliedly found that the complainant’s mother’s testimony
lacked credibility.  See Charles, 146 S.W.3d at 213; State v. Ross,
32 S.W.3d 853, 856–58 (Tex. Crim. App. 2000).  

In a motion-for-new-trial hearing, the trial judge
may believe or disbelieve all or part of a witness’s testimony, even if that
testimony is by affidavit and is uncontroverted.  See Charles, 146
S.W.3d at 210–13; Ross, 32 S.W.3d at 856–58.  The trial judge reasonably
could have disbelieved the part of the complainant’s mother’s testimony that
provided the only proof of an essential element that appellant needed to prove
as to the alleged Mooney violation and the alleged Brady violation.
 See Clarke, 270 S.W.3d at 581 (agreeing with statement
in dissenting opinion that, if the trial court in this case had credited
appellant’s evidence, then it would have granted his motion for new trial, but
stating that this issue goes to the merits of this appeal rather than to the
preservation-of-error issue); Charles, 146 S.W.3d at 213; Ross, 32 S.W.3d at 858.  

In addition, the statement in question is a
single, unsworn statement in the PSI report.  According to this statement, the complainant’s
mother said “she had an intuition
that perhaps the defendant’s sister had a similar experience with her brother,
but was afraid to relate the experience to anyone.”  Neither the State nor
appellant argued at the punishment hearing that the trial court should base its
assessment of punishment on this statement or on any alleged conduct by
appellant towards his sister.  Appellant testified and, among other things,
minimized his conduct and asserted that the complainant asked him to have sex
with her, contrary to the complainant’s testimony.  The trial judge did not
state that he was basing his assessment of punishment on the statement in the
PSI report, even though he recited in open court his reasoning in assessing
punishment.  Under the respective standards for materiality regarding the alleged
Mooney violation and the alleged Brady violation, the trial court reasonably could have concluded that the
testimony or evidence in question was not material to the trial court’s
decision to assess punishment at ten years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.   

For the reasons stated above, we conclude that the trial court did not
abuse its discretion by denying appellant’s motion for new trial.  We overrule
appellant’s sole issue and affirm the trial court’s judgment.

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Panel consists of Justices Anderson, Frost, and
Mirabal.*  

 

Publish C Tex. R. App. P. 47.2(b).









[1] Though it has been suggested that the Mooney line of
cases was incorporated into the Brady rule, these two lines of decisions
are distinct.  See Ramirez v. State, 96 S.W.3d 386, 394 (Tex.
App.—Austin 2002, pet. ref’d).  





*  Senior Justice Margaret G. Mirabal sitting by
assignment.