

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00352-CR

Kathleen **COLE-MAYER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 359926
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 24, 2013

AFFIRMED

Kathleen Cole-Mayer was convicted of assault bodily injury-married and was sentenced to one year confinement in jail. Her sentence was then suspended, and she was placed on community supervision for one year. On appeal, she argues that (1) the trial court erred in allowing the State to argue facts outside the record during closing argument; and (2) the trial court erred in denying her motion for new trial. We affirm.

On April 26, 2011, Kathleen Cole-Mayer and her husband, Harvey Mayer, had an altercation at their home. Unbeknownst to Kathleen, a few days before April 26th, Harvey had

visited with a divorce attorney, closed their joint bank account, and canceled their joint credit card. Thus, on April 26th, during a visit at their bank, Kathleen discovered $300 missing from their joint bank account and was told that her social security check and Harvey's social security check were being withheld from the account. According to Kathleen's testimony at trial, the bank teller was unable to explain the reason for the holds on the checks. Kathleen then went to a grocery store and attempted to use her credit card to pay for the groceries, but her card was declined. When she returned home, Harvey was sitting in his recliner, watching television and eating dinner. Kathleen testified that she asked Harvey about the missing $300, but he was unresponsive. She then went to Harvey's bedroom to retrieve his wallet and found $300 inside the wallet. Kathleen testified that she then went back to the living room and asked Harvey, "Is this where the $300 is?" According to Kathleen, Harvey jumped out of his recliner and shouted at her to give him the wallet. Kathleen testified that Harvey grabbed her from behind, and then grabbed her arms and wrists. Kathleen then threw his wallet across the room.

In direct contradiction to Kathleen's testimony, Harvey testified that he was not the first aggressor. According to Harvey, he was sitting in his recliner when Kathleen, upon entering the home, struck him from behind. She then left the living room. When she came back, she had his wallet in her hand. Harvey testified that he followed her back to his bedroom and reached for his wallet when Kathleen struck him in the mouth with her forearm.

After both parties called 911, Officer Miller was one of the officers who responded to the call. He testified that he separated the parties and questioned them separately. Officer Miller testified that Kathleen told him the following:

> Ms. Mayer told me that Harvey was watching TV, and she went into his bedroom. They have separate bedrooms. She went into his bedroom [and] was going through his wallet. This is according to her. And she found that he had closed one of their joint checking – or check [sic] bank accounts, and she approached him. He was watching TV in their living room. She had hidden his wallet behind her back and

initiated questioning him about closing that checking account. He realized that she had his wallet. He stood up and tried to get it back from her, and she was pushing him back. She told me that she used her left arm to push him back, and that's when she actually hit him in his mouth. And then Kathleen told me that she threw the – threw Harvey's wallet at him and hit him and that all the stuff fell out of his – out of his wallet onto the living room floor.

Officer Miller testified that after his investigation, he concluded Kathleen "was the primary aggressor in this instance" and arrested her.

In her first issue, Kathleen argues that the trial court erred in allowing the prosecutor to argue facts outside the record during closing argument at the guilt-innocence phase of the trial. During closing argument, the prosecutor argued the following:

STATE:  In the 911 notes that they are taking down, [Kathleen] says she pushed him. She told the 911 operator she pushed him. She told the officer she pushed him. And she gets up here and tells us she didn't touch him. We know she's lying about that. It is clear from her own words that she pushed him. But she kind of did herself in at the very end when I asked her, we said, when Harvey came home, did he have a swollen lip? Did he have anything on it? She said no, he didn't have anything on there. And yet at the end of the night, and you will get to see photos, Harvey has got a swollen lip. They are kind of dark. When you take them back, compare the right side of his lip, that much of his lip, you can see to the left. On the close-up, you can see a little indentation there, a little bit of a – I guess you would call it kind of a bruise, a little bit of a dark redness. Look up close when you get back there. These are hard to see from this far away. You can see that Harvey didn't have anything when she came home, and now he's got something. They are the only two people in the house. Her saying she didn't touch him, that's a lie, because she told the officer, she told the 911 operator, and Harvey's face shows that something hit him. She hit him right in the mouth. We're talking about the other photos, how she complained about her injury to her wrist and how he grabbed her wrist. Remember, he said he was kind of swatting at her up here. This is the difference – his injury and her injury is the difference on what could have happened and reasonable doubt. There's no question that she hit him in the mouth. *She told you she did.* She told two people and the injuries –

DEFENSE:  I'm going to object, Your Honor. She never – that was never in evidence –

COURT:  All right.

DEFENSE:  -- the admissions.

COURT: All right. I'm going to go ahead and overrule because the jury has heard the evidence and you'll just go by the evidence that you've heard.

(emphasis added).

A proper jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). Any appellate claim that a prosecution argument strayed outside of these categories is forfeited if there was no contemporaneous trial objection. *See Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004); *see also Milam v. State*, No. AP-76379, 2012 WL 1868458, at *19 (Tex. Crim. App. 2012). If there was a contemporaneous trial objection to improper jury argument, such argument does not result in reversal "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*

On appeal, Kathleen argues the trial court erred in overruling her objection because the prosecutor engaged in improper jury argument by arguing facts outside the record. According to Kathleen, by stating "[s]he told you she did," the prosecutor argued to the jury that Kathleen had testified and admitted to the jury that she had hit Harvey in the mouth when, in fact, she testified that she did not hit Harvey in the mouth. However, we agree with the State that in considering the statement "[s]he told you she did" in the context of the entire argument, it is clear that the prosecutor was making reference to Officer Miller's and Harvey's testimony, which both reflect Kathleen saying on the day of the incident that she had hit Harvey. Indeed, before making the statement "[s]he told you she did," the prosecutor made reference to Kathleen testifying that she

had not hit Harvey: "And she gets up here and tells us she didn't touch him." Thus, the prosecutor's argument was a reasonable deduction from the evidence.

In her second issue, Kathleen argues that the trial court erred in denying her motion for new trial. Officer Miller testified at trial that his entire interaction with the Mayers was recorded by a microphone attached to his uniform and synced with the dashboard camera in his patrol car. Officer Miller testified, however, that he never disclosed the recording in his report and that it was erased within a certain period of time after the incident. On appeal, Kathleen argues that by failing to disclose this recording to her, the State violated her rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). However, Kathleen has failed to preserve this issue for appeal. *See Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (explaining that in order to preserve an issue that a *Brady* violation occurred, the accused must voice his complaint in a timely fashion). At the time Kathleen unintentionally elicited this testimony from Officer Miller at trial, she made no objection pursuant to *Brady*. Nor did Kathleen argue that her rights pursuant to *Brady* had been violated in her motion for new trial. Instead, at the hearing on her motion for new trial, Kathleen argued that the trial court should grant a new trial pursuant to Texas Rule of Appellate Procedure 21.3(e), not pursuant to *Brady*. Thus, by failing to make a *Brady* argument to the trial court, Kathleen has failed to preserve this issue for appeal. *See Clarke v. State*, 270 S.W.3d 573, 582 (Tex. Crim. App. 2008) (explaining that to preserve an issue for appeal, "a particular argument relied upon on appeal must have been presented to the trial court").

We therefore affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish