

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1454-07

### ARSENIO CARLOS CLARKE, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined. KELLER, P.J., filed a dissenting opinion in which, KEASLER and HERVEY, JJ., joined.

### O P I N I O N

In this case, we clarify that a claim that the trial court erred in denying a motion for new trial is preserved for appellate review if the nature of the ground allegedly warranting the new trial is raised and litigated, without objection, at some point during the motion-for-new-trial proceedings.[1] We therefore reverse the court of appeals, which had held that

---

[1] We granted review on appellant's two questions:

1. Was the appellant's complaint at the motion for new trial hearing adequate to put the

appellant failed to preserve the constitutional complaint he raised on appeal in two different ways: (1) by failing to include the specific ground in his written motion for new trial (even if it was not fully developed at that time); and (2) by failing to inform the trial judge of the specific constitutional provisions and cases that he cited on appeal.[2]

## I.

Appellant, age twenty-two, was charged with sexually assaulting his 14-year-old step-cousin. He pled guilty without an agreed recommendation on punishment. The trial court found appellant guilty and set a Presentence Investigation (PSI) Hearing. At the beginning of the hearing, the trial judge asked appellant's counsel if he knew of any errors in the PSI report. Counsel stated that he and his client had "no problems" with the PSI report, except for the "conjecture on behalf of the victim's mother." Counsel was referring to this part of the victim impact statement in the PSI:

> Ms. McClean reported her niece, sister of the defendant, called her the day she took the complainant to the hospital. She reported her niece lives with her grandmother in New York, not with her mother. She stated her niece was very apologetic about her brother and stated she hated him for what he had done to

trial court and the prosecutor on notice that the appellant was making a claim under *Brady v. Maryland*, and therefore under the Fourteenth Amendment of the United States Constitution and Art. I, Sec. 9, of the Texas Constitution as well?

2. Were the specific grounds of the appellant's complaint made apparent from the context in which they were made, and thus adequate to preserve error under TEX. R. APP. P. 33.1(a)(1)(a)?

[2] *Clarke v. State*, 233 S.W.3d 574, 577-78 (Tex. App. —Houston [14th Dist.] 2007).

the complainant.  Ms. McClean stated she had an intuition that perhaps the defendant's sister had a similar experience with her brother, but was afraid to relate the experience to anyone.

The trial court accepted the presentence report as submitted and then heard testimony. The complainant testified that appellant came from Brooklyn to live with her family in 2004 to help her step-father and her mother with their business and to get a "new chance."  She said that he sexually assaulted her three times: the first two incidents were in her brother's room, and the third was in her own room.  Her step-father–who had overheard appellant and the complainant whispering–asked her what they were whispering about, and she told him what had been happening.  Appellant told the parents that the sex was consensual, but they believed the complainant, who said that it was not.

The complainant's mother, Maurina McClean, testified that she let appellant live with them because she had "heard that he had gotten into some trouble."  But "it wasn't something he did and I guess the case was dismissed.  And he needed to get out of New York to have a new chance."  She was prepared to let him stay there until he could "get himself back on his feet." She trusted him because he was family. When she found out about the assaults, she took the complainant to the emergency room and contacted the police.

The complainant's step-father, Kurt McClean, testified that, when he found out about the assaults, he literally threw appellant out of the house.  Nevertheless, he thought probation would be appropriate, in part because his nephew was "still a young man beginning his life."

Appellant's step-father, Ricardo Buchanan, testified for appellant.  He said that he

learned about the assaults when appellant came back to New York. Appellant admitted that he had had sex with a minor; he never denied it. Mr. Buchanan thought that appellant could comply with probation conditions. The prosecutor asked about the PSI report:

Q:      Are you aware that since this incident has occurred [appellant's mother] no longer allows him to [babysit the younger children in her household]?

A:      That's not true.

Q:      Okay. So, if the defendant were to have reported in the presentence investigation report to this Court that since the offense occurred, his mother was worried about him being around his little sister, that would be incorrect?

A:      That's incorrect.

Q:      Okay. So, if that were in the PSI, you're saying that that would be incorrect.

A:      It would be incorrect.

Finally, appellant himself took the stand. He said he was back living in Brooklyn. He acknowledged that he'd "made a big mistake" by having "sex with a minor." He apologized. He said he told the PSI writer that his mother was initially worried about him being around his little sister because of the case, but that he still baby-sat his little sister and brother. He also said that he did not force himself on his cousin.

Defense counsel then asked for probation, and the State asked for imprisonment. The judge noted that, even if the 14-year-old girl had asked him for sex, it's still rape: "There's no other way to put it other than rape." He sentenced appellant to ten years in prison.

Appellant filed a motion for new trial, asserting that "the presentence investigation

report in this case contained totally unfounded allegations from the Complainant's mother,

Maurina McClean, that the Defendant had molested his own sister." He attached an affidavit

from his sister, Chyva Clarke, in which she stated that her brother had never done anything

inappropriate with her, sexually or otherwise. She also said: "I hardly know Maurina

McClean. For her to have any 'intuition' about me, or about my relationship with my

brother, is very presumptuous." Appellant's motion emphasized that the matters raised in

it could "not be adequately addressed from the existing record," and he requested a hearing.

A hearing was held on the motion.[3] Appellant supplied an affidavit from Maurina

McClean, who said that

> Prior to the sentencing hearing in this case, the prosecutor, Ms. Spalding,
> asked me something about whether I knew anything about Arsenio molesting
> or abusing his sisters in New York. I replied that I knew nothing about that.
> I was puzzled by the question, but assumed that it must be something that is
> routinely asked in cases like this. However, I had no idea that in the written
> presentence investigation report, I was quoted as saying that I had an intuition
> that Arsenio had engaged in improper conduct with his sister. If I had known
> that this was in writing, in the report, I would have asked that it be removed.
> I never said such a thing.

Appellant also submitted an affidavit from his trial attorney who said–in essence–that

he was blind-sided by the allegation. He chose not to question Ms. McClean about it–for fear

of bringing additional attention to it–when he did not have time to bring appellant's sister

from New York to refute the allegation. He said that he "was never provided the exculpatory

---

[3] Initially, the trial court denied the motion without conducting a live hearing, but the court of appeals abated the case to conduct such a hearing before addressing appellant's claim on appeal. *Clarke*, 233 S.W.3d at 577.

information that in fact the Complainant's mother had not made the statements attributed to her in the PSI."

At the hearing, appellant argued that, based on the affidavit by the complainant's mother, the prosecutor was aware that the implication in the PSI was false and that she "[t]ook no steps to alert the Court or defense counsel that this exculpatory evidence–that there was exculpatory evidence, namely the falsity of this extraneous offense."[4]  The State

_____

[4]  The context of appellant's argument makes his position crystal clear:

> Your Honor, just in the way of making sure that our objection and our grounds here at this level are also grounds that are argued on appeal, so that there's no misunderstanding. We have raised in our motion the matter of there being an extraneous offense that was attributed to Mr. Clarke who was the defendant in the PSI report that both–that essentially he may have molested his sister in  New York, Chyva Clarke.  She has provided an affidavit that that never happened. And the mother of the complainant to whom the remark was attributed in the PSI has also now provided an affidavit saying that she never told anyone that she had been told that by the sister.
>
> The mother of the complainant goes on to say in her affidavit that she was asked prior to the sentencing hearing–prior to the PSI hearing by the prosecutor whether the defendant–whether she knew of the defendant's having molested his sister. The mother of the complaint said no, she knew nothing about that. So, the prosecutor had that information prior to the sentencing hearing.
>
> And we are arguing as part of what is in the motion for new trial that the prosecutor had a duty at that point to inform defense counsel, Rand Mintzer, that this matter that's in the sentencing report is false. This extraneous offense didn't happen according to the sister as evidenced by the affidavit. But at the time the prosecutor knew that because the mother of the complainant was telling her I don't know anything about that sort of thing. And it was imputed to her in the sentencing report. So, there's an extraneous offense in the PSI that clearly didn't happen much less being proven beyond a reasonable doubt.
>
> And that was never objected to by defense counsel. And I want to make a point about that. This is not an ineffective assistance claim. It never was. If you look closely at the motion for new trial, I argue that the defendant was denied effective assistance of his counsel through no fault of counsel. Counsel came in on the morning of the PSI hearing. Saw the PSI for the first time. It may have been the day before, it's in his affidavit. Saw this extraneous offense in there and was sort of caught between a rock and a hard place. He didn't know whether to–he did

offered no evidence at the hearing and did not object that appellant was enlarging or changing the legal basis of his motion. The prosecutor stated that he had no evidence to offer and no argument to make. In essence, he stood mute. The trial court denied the motion for new trial without comment.

On appeal, appellant raised a single issue:

The prosecutor deliberately deceived the trial court during the punishment phase by allowing evidence concerning an alleged extraneous offense known by the prosecutor to be false, to remain in the presentence report, in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution.

He argued that the prosecutor failed to tell either defense counsel or the trial court that the information contained in the PSI was false, and, as a result, "the trial court was free to believe that the Appellant's admitted sexual misconduct against the Complainant was not an isolated incident but instead a pattern[.]"[5]

---

object to it. But did not go into it during questioning of the complainant's mother, to whom the remark was made because he had not had time to investigate this.

He asked the defendant about it. He said I've never done such a thing. But he was left with really a dilemma, do I make a real issue out of this and bring up an extraneous that may have all sorts of damaging facts or not. It turns out this is a completely false allegation that somehow made its way into the presentence report. And what is particularly alarming is that the prosecutor apparently knew about it before the sentencing. Took no steps to alert the Court or defense counsel that this exculpatory evidence–that there was exculpatory evidence, namely the falsity of this extraneous offense.

So, these are our grounds that we're presenting.

Court: All right. State, any rebuttal? Anything?

State: No, Your Honor.

Immediately thereafter, the trial court denied appellant's motion.

[5] Appellant's Amended Brief on Direct Appeal at 7-8.

The court of appeals held that appellant waived his complaint. A majority held that appellant had not preserved error because (1) he did not timely make a prosecutorial misconduct claim in his written motion for new trial or in any amendment to that motion,[6] and (2) even if he had raised a prosecutorial misconduct claim at the hearing itself, he still waived any constitutional claim on appeal because he did not present any constitutional argument to the trial court at the hearing.[7]

Justice Mirabal dissented. She noted that, both in appellant's motion and at the hearing, he argued that inaccurate information in the PSI report denied him a fair punishment hearing. On appeal, he focused on one part of his argument–that the prosecutor knew that the evidence was false and did not inform defense counsel or the trial court. Because the

---

[6] *Clarke*, 233 S.W.3d at 577 ("In this case, appellant filed an original motion within the thirty-day period. Appellant did not file any amendments to this motion, nor did he request leave to file any amendments. Interpreting appellant's motion for new trial liberally, we cannot conclude that it encompasses any claim of prosecutorial misconduct. Although appellant's written motion contains a reference to the PSI report including a possible false statement, there is no specific allegation that the State committed misconduct in connection with the inclusion of this statement. We conclude that because appellant did not include this ground in his written motion for new trial (even if it was not fully developed at the time), he failed to preserve error on this complaint.").

[7] *Id.* at 578 ("even if it were proper to conclude that appellant's complaints made at the hearing (but not in the written motion) were preserved, appellant still could not prevail because the complaint he raises on appeal is not the same complaint he raised at the hearing on his motion for new trial. At the hearing, appellant argued that the PSI report contained a false statement made by the complainant's mother, and the State should have informed defense counsel and the court, prior to sentencing, that this statement was false. On appeal, appellant argues that this alleged prosecutorial misconduct deprived him of both due process of law under section 1 of the Fourteenth Amendment of the United States Constitution and a trial conducted according to due course of law under article I, section 19 of the Texas Constitution.").

argument was presented to the trial court, it was preserved.[8]  She stated: "Appellant's statement of his position was clear enough to put the court on notice as to the nature of his complaint, i.e., *Brady*[9] error, and therefore, to preserve error on appeal. We should reach the merits of his complaint."[10]

Appellant petitioned this court, championing Justice Mirabal's position that his complaint to the trial court was adequate to put the trial court and the prosecutor on notice that he was making a *Brady* claim, which itself "clearly does invoke the constitutional provisions he complained of on appeal."

## II.

Appellant argues that the trial court and the prosecutor both understood the claim he was making at the new trial hearing.  Under Appellate Rule 33.1(a)(1)(A), he made his claim "with sufficient specificity to make the trial court aware of the complaint," and his specific grounds "were apparent from the context."[11]  Although counsel did not specifically cite *Brady*, "counsel's complaint was obviously that the prosecutor had violated the rules of *Brady v. Maryland* in looking the other way while an extraneous offense that she knew the

---

[8] *Id.* at 583 (Mirabal, J., dissenting).

[9] *Brady v. Maryland*, 373 U.S. 83, 87 (1963), relying on the Due Process Clause, requires the government to disclose any evidence in its possession that is favorable to the accused and material to either guilt or punishment. *Giglio v. United States*, 405 U.S. 150, 153-154 (1972), extended this rule to include impeachment evidence as well as exculpatory evidence.

[10] 233 S.W.3d at 583 (Mirabal, J., dissenting).

[11] Appellant's Brief at 4.

Appellant had not committed was attributed to him as part of his punishment hearing."[12]

Appellant noted, "The prosecutor failed to reveal exculpatory evidence.  That is a *Brady*

violation, hardly an esoteric or unknown proposition in criminal law circles."[13]

We agree that, under Rule 33.1, appellant preserved error on his *Brady/Giglio* claim.

Rule 33.1 provides that, to preserve error, a complaint must be "made to the trial court by a

timely request, objection, or motion that stated the grounds for the ruling that the

complaining party sought from the trial court with sufficient specificity to make the trial

court aware of the complaint, unless the specific grounds were apparent from the context."[14]

Here, appellant argued at the new-trial hearing that the prosecutor was aware that the

implication in the PSI was false and that the prosecutor had a duty to inform defense counsel

and the trial court that the allegation was false.  In his appellate brief, submitted after the

hearing, he cited: (1) the Fourteenth Amendment; (2) Art. I, § 19, of the Texas Constitution;

(3) *Brady*; (4) *Giglio*; and (5) the *Mooney-Pyle-Napue* line of cases.[15]

---

[12] *Id.* at 2.

[13] *Id.* at 4-5.

[14] T EX. R. APP. P. 33.1(a)(1)(A).

[15]  *See Giglio v. United States*, 405 U.S. at 153-54 ("As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' This was reaffirmed in *Pyle v. Kansas*, 317 U.S. 213 (1942). In *Napue v. Illinois*, 360 U.S. 264 (1959), we said, 'the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' *Id.*, at 269. Thereafter *Brady v. Maryland,* 373 U.S. at 87, held that suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.' *See* American  Bar Association, Project on Standards for Criminal Justice, Prosecution Function and the Defense Function § 3.11 (a). When the 'reliability

His complaint to the trial court concerning prosecutorial misconduct was sufficiently specific to make the judge aware of the complaint, and his complaint on appeal was essentially the same. As we stated in *Lankston v. State*,[16] "Straightforward communication in plain English will always suffice":

> The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.[17]

The court of appeals faulted appellant for not presenting his claim of prosecutorial misconduct in his written motion for new trial.[18] But appellant could not have presented any

---

of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra*, at 269. We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' *United States v. Keogh*, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under *Brady, supra,* at 87. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' *Napue, supra,* at 271.").

[16] *Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992).

[17] *Id.* at 909.

[18] We note that there is nothing in the Rules of Appellate Procedure which requires that a written motion for new trial precisely identify the contours of a defendant's ground for granting a new trial. Indeed, Rule 21.3(h) states that one ground on which a trial court must grant a new trial is "when the verdict is contrary to the law and the evidence." TEX. R. APP. P. 21.3. A trial judge is certainly within his discretion in declining to set a motion alleging such a general ground for an evidentiary hearing. But if he does conduct an evidentiary hearing, and the defendant offers evidence that the prosecutor violated the law set out in *Brady v. Maryland*, the trial court has jurisdiction to rule upon the merits of that claim by granting or denying the motion for new trial.

*Brady/Giglio* claim in his written motion (filed April 21, 2006) because he did not become aware of it until after the motion had been filed. It was not until appellant interviewed witnesses for the new-trial hearing that the complainant's mother said, in passing, that the prosecutor had asked her if she knew anything about appellant molesting his sister and she had said no. Ms. McClean's affidavit was signed on December 5, 2006, and appellant presented his evidence and argument to the trial judge at the earliest available opportunity – the new-trial hearing on December 15, 2006. Appellant exercised due diligence. The fact that the legal argument was not presented in his original written motion does not prevent appellant from having his claim heard on appeal. The argument was presented to the trial judge in time for him to rule on it. That is all that is required.[19]

Both the court of appeals and Presiding Judge Keller, in her dissent, appropriately cite to our recent decision in *State v. Moore*.[20] The court of appeals cited *Moore* for the proposition that no amendments to a motion for new trial are allowed if those amendments are made after the initial thirty-day period for filing the motion has expired and the opposing party objects.[21] Here, appellant did not file a written amendment to his original motion, but

---

[19] *See Keeter v. State*, 175 S.W.3d 756, 759-760 (Tex. Crim. App. 2005) ("Because of the nature of the appellant's complaint on appeal–that the trial court erred in denying his motion for new trial–he must have raised the *Brady* complaint *at some point during the motion for new trial proceedings* to preserve the complaint for appellate review.") (emphasis added).

[20] 225 S.W.3d 556 (Tex. Crim. App. 2007).

[21] *Clarke*, 233 S.W.3d at 577 (stating that, under *Moore*, the "trial court retains the authority to allow an amendment to the original motion within the seventy-five day period, and to rule on that amendment, so long as the [State] does not object.").

he certainly brought this aspect or enlargement of his original claim to the attention of both the prosecutor and the trial judge. The State did not object to appellant's claim as he presented it at the hearing on the motion for new trial. Indeed, the State essentially stood mute throughout the hearing. Therefore, under *Moore*, the trial judge had authority to consider and rule upon appellant's *Brady/Giglio* claim even though it was not explicitly set out in his original written motion for new trial.[22] The dissent notes that, under *Moore*, the trial court was not "required to address a claim that was not raised in the original motion for new trial."[23] That may be true, but the State did not object at the hearing, and the trial court did address that claim by rejecting appellant's motion for new trial without comment. The dissent also cites *Moore* for the proposition that "[i]f the trial judge had thought that appellant's evidence was significant, all he had to do was grant the motion and resentence him."[24] That, too, is true, but that is an issue that goes to the merits of the claim, not to its preservation. *Moore* explicitly permits a trial court to consider the merits of an untimely amendment to a motion for new trial if, as in this case, the State does not object.[25]

The appellate court also found that appellant did not preserve error because he failed

---

[22] *Moore*, 225 S.W.3d at 569-70 (noting that "the lateness of an amendment to a timely original motion for new trial affects neither the jurisdiction nor the authority of the trial court to rule"; concluding that the State, "as opponent of a tardy amendment to a motion for new trial, can forfeit its otherwise-peremptory right by inaction").

[23] Dissenting Op. at *2.

[24] *Id.*

[25] *Moore*, 225 S.W.3d at 570.

to present any constitutional argument or cite authorities at the hearing. The court of appeals relied, *inter alia*, on *Heidelberg v. State,*[26] *Neal v. State,*[27] and *Spence v. State,*[28] to find appellant's constitutional claim unpreserved. In *Neal*, the defendant argued prosecutorial vindictiveness on appeal, but he never argued that claim to the trial court. This Court found his claim unpreserved.[29] In *Spence*, the defendant complained at trial that the State's psychiatrist had not been on the State's subpoena list, but on appeal he claimed that he was denied his right to counsel before consenting to the psychiatric examination. This Court found the appellate argument unpreserved.[30] *Neal* and *Spence* are distinguishable from the present case; here, appellant did present the same basic argument to both the trial and appellate courts. He added more whistles and bells on appeal, but the tune was the same.

*Heidelberg* is slightly more on point. There, the defendant complained about the admission of evidence of his post-arrest silence. At trial, he relied on the Fifth Amendment, but on appeal he relied on Art. I, § 10, of the Texas Constitution. We found the appellate claim unpreserved and explained that the federal and Texas constitutions offer different protections, so presenting a claim based solely on federal grounds will not preserve distinctly

---

[26] 144 S.W.3d 535 (Tex. Crim. App. 2004).

[27] 150 S.W.3d 169 (Tex. Crim. App. 2004).

[28] 795 S.W.2d 743 (Tex. Crim. App. 1990).

[29] *Neal*, 150 S.W.3d at 178.

[30] *Spence*, 795 S.W.2d at 762.

different state claims.[31]

*Reyna v. State*[32] is also on point. There, the defendant offered evidence attacking a witness's credibility, but the trial court excluded that evidence. On appeal, the defendant claimed that the Confrontation Clause required its admission. We found that claim unpreserved because the defendant never argued to the trial court that the Confrontation Clause required its admission. Instead, he had argued that his evidence was not hearsay under TEX. R. EVID. 801(d) and was not excludable under TEX. R. EVID. 412(b).[33]

Another case on point–and as a contrast to the present situation–is *Keeter v. State*.[34] In that case, the defendant filed a motion for new trial alleging that "[e]vidence establishing the defendant's innocence was withheld by a material prosecution witness."[35] Affidavits from the complainant recanting her trial testimony and from her mother stating that she never believed the complainant accompanied the written motion.[36] The trial court hearing focused on the complainant's recantation and its credibility.[37] The trial court denied the motion for

---

[31] 144 S.W.3d at 537-43.

[32] 168 S.W.3d 173 (Tex. Crim. App. 2005).

[33] *Id.* at 179.

[34] 175 S.W.3d 756 (Tex. Crim. App. 2005).

[35] *Id.* at 757.

[36] *Id.* at 758-61.

[37] The parties did not make any argument at the conclusion of the testimony. *See Keeter v. State*, 105 S.W.3d 137, 152 (Tex. App. —Waco 2003) (Gray, J., dissenting), *rev'd*, 175 S.W.3d 756 (Tex. Crim. App. 2005).

new trial and addressed the defendant's actual-innocence claim by stating that he did not find the recantation testimony credible. The defendant raised a *Brady* claim on appeal. We held that this claim was forfeited because the evidence that the defendant argued had raised a *Brady* issue was relevant to the defendant's actual-innocence claim, and the record supported the conclusion that neither the State nor the trial court understood that the defendant was raising a *Brady* claim as well as an actual-innocence claim.[38] The complaint in the trial court was that a witness withheld evidence, not that the State had done so.[39]

These cases do not stand for the proposition that a specific constitutional provision that is cited on appeal must also have been cited to the trial judge. Rather, their common rationale is that a particular argument relied upon on appeal must have been presented to the trial court. In *Heidelberg*, *Reyna* and *Keeter*, the constitutional provision relied upon on appeal set forth different or additional legal grounds for relief than that argued at trial. Because the trial judge had never been requested to rule on those grounds, we found the claims to be unpreserved.

This case is different. The constitutional provisions that appellant cited on appeal do not present any different or additional grounds for relief; rather, they are simply the underlying legal support for the claim that appellant presented to the trial court, namely that the prosecutor had a duty to inform defense counsel and the court that the extraneous matter

---

[38] 175 S.W.3d at 761.

[39] 105 S.W.3d at 152 (Gray, J., dissenting).

in the PSI report was false.  This was his claim in the trial court, and this was his claim in the court of appeals.  He has gussied it up with legal authority, but the underlying claim is precisely the same one.  It was not procedurally defaulted.

We therefore reverse and remand this case to the court of appeals to review appellant's claim on the merits.

Delivered:     September 24, 2008

Publish