02-10-438-CR










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00438-CR

 

 


 
 
 Kory Nelson Turner
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 396th
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

 

          Kory
Nelson Turner appeals his conviction and twelve-year sentence for murder.  He
brings nine points:  (1) the trial court violated his right to a public trial
by excluding his family members from voir dire; (2–3) the trial court erred by
refusing to allow testimony regarding prior acts of violence by the victim and
the victim’s character for violence; (4) the trial court erred by refusing to
strike testimony regarding the victim’s never having been violent in the past;
(5–7) the trial court erred by refusing to allow appellant to present evidence
of his peaceful character under rule 404 and to rebut the State’s evidence of
his aggressive behavior, thereby preventing appellant from presenting a
complete defense under the Sixth and Fourteenth Amendments; (8) the trial court
erred by refusing to allow appellant to present evidence that a key State’s
witness was subject to having been influenced by his arrest for family
violence; and (9) the trial court erred by refusing appellant’s timely
requested jury instruction on criminally negligent homicide.  We reverse and
remand.

Background

          David
(Dave) Castello, a friend of appellant’s, invited another friend of his,
Leonard E. “Lenny” Keith, Jr., to a party at appellant’s house.  Appellant,
Dave, and Keith were all drinking at the party.  Early the next morning, after
at least one confrontation with Keith about appellant’s wife, appellant shot
and killed him.  A jury convicted appellant of murder.

Right
to Public Trial

          Appellant
contends in his first point that the trial court violated his right to a public
trial by refusing to allow some of the prospective jurors to sit in the jury
box during voir dire to make room for appellant’s family in the gallery.  The
State contends that appellant failed to preserve his appellate argument for
review.

Preservation
of Error

The
following exchange occurred at trial:

THE COURT:  All
right.  Outside the presence of the jury, it is my understanding that the Defense
wishes to have family members present during the jury selection; is that
correct?

 

MR. MOORE:  Judge,
his wife and his brother are here, and I’ve asked them to be here today for
the express purpose to see if anybody on the panel knows them.  I think his
father-in-law is also here.  I don’t -- in making an inquiry of the Court, it
appears that the entire courtroom seating area is going to be full, so I have requested
that the Court seat some of the potential jurors in the jury box so that I can
have room to get at least those three people in the room.

 

THE COURT:  Well, I’m
going to deny that request, but I will allow you to have them come in if you would
-- for the purpose of introductions.

 

MR. MOORE:  We’ll do
it that way, Judge.

 

THE COURT:  I’ve got
no problem with that.

 

MR. MOORE:  I
object to the Court’s not making arrangements allowing them to be present for
the voir dire examination.

 

THE COURT:  Well,
unfortunately, we are bringing in chairs to accommodate the large panel, and so
I’m going to overrule your request.

 

MR. MOORE:  Note my
exception.

 

THE COURT:  I
understand.  [Emphasis added.]

 

The
Sixth Amendment guarantees to the accused in all criminal prosecutions the
right to a “public trial”; this fundamental right was extended to defendants in
state criminal prosecutions through the Fourteenth Amendment.  See Herring
v. New York, 422 U.S. 853, 856–57, 95 S. Ct. 2550, 2552–53 (1975); In re
Oliver, 333 U.S. 257, 273, 68 S. Ct. 499, 507 (1948).  Although the
violation of the right to a public trial is structural error––that is, error
that does not require an appellant to prove specific prejudice to obtain a new
trial, Steadman v. State, 360 S.W.3d 499, 510 & nn.40–41 (Tex. Crim.
App. 2012)––a complaint that the right to a public trial was violated is
nevertheless subject to procedural error preservation rules, Levine v.
United States, 362 U.S. 610, 618–19, 80 S. Ct. 1038, 1043–44 (1960); United
States v. Hitt, 473 F.3d 146, 155 (5th Cir. 2006), certs. denied,
549 U.S. 1360, 550 U.S. 969 (2007); Brandley v. State, 691 S.W.2d 699,
707 (Tex. Crim. App. 1985); see also Lilly v. State, 365 S.W.3d 321,
327–28 (Tex. Crim. App. 2012) (refusing to address appellant’s right to public
trial claims under the Texas constitution and code of criminal procedure
because appellant failed to brief those arguments and authorities separately).

To
preserve error for appeal, a party must have “stated the grounds for the ruling
that the complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context.”  Tex. R. App. P. 33.1(a)(1)(A).  The
court of criminal appeals has held that

[a]s regards
specificity, all a party has to do to avoid the forfeiture of a complaint on
appeal is to let the trial judge know what he wants, why he thinks himself
entitled to it, and to do so clearly enough for the judge to understand him at
a time when the trial court is in a proper position to do something about it. 
Of course, when it seems from context that a party failed effectively to
communicate his desire, then reviewing courts should not hesitate to hold that
appellate complaints arising from the event have been lost.  But otherwise,
they should reach the merits of those complaints without requiring that the
parties read some special script to make their wishes known.

 

Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).  The
objection must merely be sufficiently clear to provide the trial judge and
opposing counsel an opportunity to address and, if necessary, correct the
purported error.  Ford v. State, 305 S.W.3d 530, 533 (Tex. Crim. App.
2009).  In making this determination, an appellate court should consider the
context in which the complaint was made and the parties’ understanding of the complaint
at the time.  Id.

          Appellant
clearly objected to the exclusion of members of the public, his family, from
the trial court proceedings.  Although he did not give the trial court any
constitutional authority for his objection to the exclusion of those family
members, he made his desire for their inclusion clear even though he agreed to
a less desirable alternative, i.e., their being introduced to the jury, over
his objection.  This case is similar to Clarke v. State, in which the
court of criminal appeals held that the appellant’s argument in his motion for
new trial––that the prosecutor had deliberately allowed false material to be
included in the presentence investigation report (PSI)––was the same
substantively as his argument on appeal; the appellant “added more whistles and
bells on appeal, but the tune was the same.”  270 S.W.3d 573, 580–81 (Tex.
Crim. App. 2008).

          In
Clarke, the appellant entered an open plea of guilty to sexually
assaulting his fourteen-year-old step-cousin.  Id. at 575.  At the
punishment hearing, the State proffered, and the trial court admitted, a PSI,
in which Clarke’s aunt said that “she had an intuition that perhaps the [appellant’s]
sister had a similar experience with her brother, but was afraid to relate the
experience to anyone.”  Id.  At the beginning of the hearing, when the
trial judge asked if anyone had a problem with the PSI, Clarke’s counsel said
that Clarke had no problems with the PSI “except for the ‘conjecture on behalf
of the victim’s mother.’”  Id.

          Clarke
filed a motion for new trial, asserting that the PSI “contained totally
unfounded allegations from the Complainant’s mother . . . that [Clarke] had
molested his own sister.”  Id. at 576.  He argued at the motion for new
trial hearing that “based on the affidavit by the complainant’s mother, the
prosecutor was aware that the implication in the PSI was false and that she ‘[t]ook
no steps to alert the Court or defense counsel that this exculpatory evidence––that
there was exculpatory evidence, namely the falsity of this extraneous offense.’” 
Id. at 577.  On appeal, Clarke raised the following issue:  “The
prosecutor deliberately deceived the trial court during the punishment phase by
allowing evidence concerning an alleged extraneous offense known by the
prosecutor to be false, to remain in the presentence report, in violation of
the Fourteenth Amendment of the United States Constitution and Article 1,
Section 19 of the Texas Constitution.”  Id. at 578.  The Fourteenth
District court of appeals, with Justice Mirabal dissenting, held that Clarke
did not preserve this argument for appeal because

(1) he did not timely make a prosecutorial misconduct
claim in his written motion for new trial or in any amendment to that motion,
and (2) even if he had raised a prosecutorial misconduct claim at the hearing
itself, he still waived any constitutional claim on appeal because he did not
present any constitutional argument to the trial court at the hearing.

Id. (footnotes
omitted).

          The
court of criminal appeals reversed, holding that Clarke had preserved his
complaint, even though it was not set forth in his written motion for new
trial, because he “argued at the new-trial hearing that the prosecutor was
aware that the implication in the PSI was false and that the prosecutor had a
duty to inform defense counsel and the trial court that the allegation was
false.”  Therefore, his complaint at trial and on appeal were “essentially the
same” even though he did not cite the Fourteenth Amendment; Article I, section
19 of the Texas constitution; Brady; Giglio; or the Mooney-Pyle-Napue
line of cases until appeal.[1]  Id. at 579–80.

Although
here appellant gave the judge a specific reason––that he wanted to see if
anyone on the venire panel knew the family members––he also specifically objected
to their exclusion from the proceedings.  Because the substance of appellant’s objection
at trial and his argument on appeal are “essentially the same,” we conclude and
hold that appellant preserved his argument for appeal.  Id. at 580, 583
(“He has gussied [his complaint] up with legal authority, but the underlying
claim is precisely the same one.”); see also Presley v. Georgia,
130 S. Ct. 721, 722 (2010) (reviewing merits when counsel objected to the
exclusion of the public from the courtroom during voir dire, in reference to
the appellant’s uncle).

Applicable
Law

          Upon
objection to the closure of a proceeding, the party seeking to close it must
advance an overriding interest that is likely to be prejudiced, the closure
must be no broader than necessary to protect that interest, the trial court
must consider reasonable alternatives to closing the proceeding, and it must
make findings adequate to support the closure.  Waller v. Georgia, 467
U.S. 39, 48, 104 S. Ct. 2210, 2216 (1984); Steadman, 360 S.W.3d at 504. 
The exclusion of even a single person from court proceedings can violate a
person’s Sixth Amendment right to a public trial.  See Presley, 130 S.
Ct. at 722.  Additionally, the right extends to voir dire proceedings.  Id.
at 724.

          A
trial court’s findings regarding closure must be specific; findings that are
too broad and general will not support closure.  Waller, 467 U.S. at 48,
104 S. Ct. at 2216; Steadman, 360 S.W.3d at 504.  The United States
Supreme Court has admonished that “[t]rial courts are obligated to take every
reasonable measure to accommodate public attendance at criminal trials.”  Presley,
130 S. Ct. at 725.  “[C]ircumstances justifying closure ‘will be rare . . . and
the balance of interests must be struck with special care.’”  Steadman,
360 S.W.3d at 505 (quoting Presley, 130 S. Ct. at 724).

          Here,
the trial court’s stated reason for excluding appellant’s family members from
the voir dire was that the courtroom was already crowded due to the large
venire panel that had been called in the case.  In Presley, the trial
court gave the same reason, but it also added at the motion for new trial
hearing that it was not comfortable seating family members in the same area as
prospective jurors.  130 S. Ct. at 722.  The Court concluded that

[t]rial courts are
obligated to take every reasonable measure to accommodate public attendance at
criminal trials.  Nothing in the record shows that the trial court could not
have accommodated the public at Presley’s trial. Without knowing the precise
circumstances, some possibilities include reserving one or more rows for the
public; dividing the jury venire panel to reduce courtroom congestion; or
instructing prospective jurors not to engage or interact with audience members.

 

Id. at
725.  Accordingly, the Court held that the trial court had not made findings
specific enough to warrant excluding the appellant’s uncle from voir dire.  Id.

          Here,
nothing in the record shows that the trial court’s ruling met the requirements
of Waller: the trial court did not state an overriding interest other
than space concerns,[2] did not consider
reasonable alternatives that might have accommodated appellant’s family
members, and did not make adequate findings to support its decision to exclude
appellant’s family members.  See Presley, 130 S. Ct. at 725; Waller,
467 U.S. at 48–49, 104 S. Ct. at 2216–17; Steadman, 360 S.W.3d at
506–10.  Thus, we sustain appellant’s first point and hold that he is entitled
to a new trial.[3]  See Steadman, 360
S.W.3d at 510.

Evidentiary Rulings

          Although
appellant is entitled to a new trial on his first point, we nevertheless
address appellant’s remaining points, as they involve matters that will likely
reoccur in a new trial.  See Davis v. State, 144 S.W.3d 192, 201 (Tex.
App.––Fort Worth 2004, pet. ref’d) (op. on reh’g).

Evidence
of the Victim’s Character, Propensity, and Past Violent Acts

          In
his second and third points, appellant contends that the trial court erred by
excluding Patience Castillo’s testimony regarding prior acts of violence
against her by the victim, Keith, and testimony of her opinion of Keith’s
character for becoming aggressive and violent when he was drinking.  In his
fourth point, appellant complains about the trial court’s admission of––and
refusal to strike––Dave’s testimony that he had never known Keith to be violent
in the past.  According to appellant, Castillo’s testimony was admissible under
rule 404(a)(2) as opinion evidence and also as evidence of specific acts to
rebut Dave’s testimony.  Tex. R. Evid. 404(a)(2).

Appellant
proffered Castillo’s testimony outside the jury’s presence; she testified on
voir dire that when she was seventeen or eighteen years old, she moved in with
Keith for a couple of months.  She did not know how old Keith was at the time
other than that he was older than twenty-one.  At first, Keith was good to her,
but he started drinking more and became “real easy to pick fights with.”  She
saw him engage in a lot of fights.  Eventually, she decided to terminate the
relationship.  When she tried to leave, Keith grabbed her arm hard enough to
leave a bruise, and he pushed her down on the couch.  After she left, Keith
kept calling her, driving by her job, and trying to contact her.  He made
“ugly” phone calls to her parents’ home to which she had returned.  Castillo
eventually had to call the police about Keith’s behavior.  Although Castillo
did not hear anything else from Keith after she made the police report, Keith
was charged with and pled guilty to harassment.  These events occurred in
1996.  Appellant’s trial took place in September 2010.

The
State objected on “relevance and under 403.”  The State’s main argument was
that the events testified to by Castillo had occurred over fourteen years
before the trial, and twelve years before the shooting, when Keith was in his
mid to late twenties.  The trial court sustained the State’s objection after
stating the following:

          Well, the
problem I’m having is I have a three-month period of a relationship between
your proposed witness and the deceased.  But then there’s 12 years that passes
with nothing that we can offer or be substantiated as to whether or not this
continued.  And then we have a situation to where he shows up and there’s --
nobody knows anything about him at the party.  That’s what I’m wrestling on.

 

When
asked to reconsider his ruling, the trial judge declined, indicating that his ruling
was based on rule 403.

          During
the State’s case-in-chief, on direct, Dave had testified that he knew Keith from
being involved in Cub Scouts with their sons.  Because Dave’s son was sixteen
at the time of trial, he estimated that he had known Keith for the past seven
to eight years before the trial.  Dave testified that Keith had never met
appellant or his wife, Amy, before the night of the shooting.

          The
defense recalled Dave during its case-in-chief.  After asking him about discrepancies
between his testimony at trial and his statement to police after the shooting,
consisting mainly of Dave’s failure to initially tell the police that Amy had
been willingly and openly kissing Keith that night, appellant’s counsel asked Dave,

Q.  You also
indicated on that oral statement that you gave to the police that you’d never
seen [appellant] be violent before?

 

A.  Correct.

 

Q.  In all the time
that you’ve known him?

 

A.  Correct.

 

The
State then asked Dave on cross, “[Keith] either, you’d never seen him be
violent either?,” and Dave answered, “No, sir.”  Appellant did not object. 
Accordingly, we must overrule appellant’s fourth point complaining about the
admission of, and the trial court’s failure to strike, this evidence of Keith’s
character.  See Tex. R. App. P. 33.1(a)(1); Lown v. State, 172
S.W.3d 753, 758 (Tex. App.––Houston [14th Dist.] 2005, no pet.).

          Appellant
nevertheless contends that he should have been allowed to rebut Dave’s
testimony that he had never known Keith to be violent with Castillo’s testimony
that when she knew him, Keith was easy to pick fights with when he had been
drinking.  Appellant argues that the evidence is admissible under rule
404(a)(2).  Tex. R. Evid. 404(a)(2).  Under rule 404(a)(2), a defendant may
offer evidence of the victim’s character trait for violence to demonstrate that
the victim was, in fact, the first aggressor, but he may do so only through
reputation and opinion testimony under Rule 405(a).  Tex. R. Evid. 404(a)(2),
405(a); Ex parte Miller, 330 S.W.3d 610, 619 (Tex. Crim. App. 2010).  Evidence
of specific bad acts is admissible, however, to impeach a character witness’s
testimony that the victim was peaceful.  Miller, 330 S.W.3d at 620–21.  Here,
the trial court ruled that regardless of the admissibility of Castillo’s
testimony under any relevance rules, the evidence was nevertheless inadmissible
under rule 403.[4]  Tex. R. Evid. 403.

A
rule 403 balancing test includes the following factors: (1) the inherent
probative force of the proffered item of evidence along with (2) the proponent’s
need for that evidence against (3) any tendency of the evidence to suggest
decision on an improper basis, (4) any tendency of the evidence to confuse or
distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation of
the evidence will consume an inordinate amount of time or merely repeat
evidence already admitted.  Gigliobianco v. State, 210 S.W.3d 637,
641–42 (Tex. Crim. App. 2006); Alami v. State, 333 S.W.3d 881, 889 (Tex.
App.––Fort Worth 2011, no pet.).  The rules of evidence favor the admission of
relevant evidence and carry a presumption that relevant evidence is more
probative than prejudicial.  Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim.
App. 1996), cert. denied, 522 U.S. 832 (1997).

          Because
of the remoteness of Keith’s acts and subsequent conviction to which Castillo
testified, her testimony had less probative value to rebut Dave’s testimony
about his more recent observation of Keith’s character.  For purposes of
impeachment of a character witness’s testimony about the peaceful nature of a
victim, an act, conviction, or event “must have occurred at a time sufficiently
recent to have some bearing on the present credibility of the witness.”  Miller,
330 S.W.3d at 620–21 & n.26 (quoting Sinegal v. State, 789 S.W.2d
383, 387 (Tex. App.––Houston [1st Dist.] 1990, pet. ref’d)).  This is because
there is “a presumption that one is capable of rehabilitation and that his
character has reformed over a period of law abiding conduct.”  Morris v.
State, 67 S.W.3d 257, 263 (Tex. App.––Houston [1st Dist.] 2001, pet. ref’d);
cf. Tex. R. Evid. 609(b) (providing that conviction greater than ten
years old generally may not be used to impeach witness).  Thus, the trial court
did not abuse its discretion by excluding Castillo’s testimony under rule 403. 
See Miller, 330 S.W.3d at 620–21 & n.26 (noting that questioning the
character witness with “Did you know” or “Have you heard” questions would not
be proper under rule 403 because of remoteness of victim’s conviction and
citing rule 403 cases on remoteness); Moore v. State, 143 S.W.3d 305,
314–15 (Tex. App.––Waco 2004, pet. ref’d) (op. on reh’g).  We overrule
appellant’s second and third points.

Exclusion
of Opinion Testimony On Appellant’s Character for Peacefulness

          In
his fifth through seventh points, appellant contends that the trial court
abused its discretion by refusing to allow him to present evidence of his
peaceful character.

          During
the State’s direct examination of Jennifer Mathews, she testified that she saw
Keith push appellant that night, and she told her husband that she did not
believe appellant would start a fight with Keith.  On cross-examination, appellant’s
counsel asked Mathews if she had ever known appellant to be a violent person,
and she said she did not know him “in that manner” but that she had never seen
him be physically violent.  She also said that his bark was worse than his
bite.  On redirect, the State asked about her opinion of his character, and she
said, appellant “is probably more verbally harsh than I would be able to
tolerate.”  She also testified that he got angry quickly and agreed that he
tended to “run his mouth” a lot.  Appellant then sought to admit testimony from
a good friend that he had never known appellant to be violent or aggressive. 
The State objected on relevance grounds, and the trial court sustained the
objection.[5]

Generally,
character evidence is not admissible to show that a person acted in conformity
with a character trait on a particular occasion.  Tex. R. Evid. 404(a); Melgar
v. State, 236 S.W.3d 302, 306 (Tex. App.––Houston [1st Dist.] 2007, pet.
ref’d).  But an accused in a criminal case is permitted to introduce evidence
of a specific good-character trait to show that it is improbable that he
committed the charged offense when that character trait is relevant to the
offense.  Tex. R. Evid. 404(a)(1)(A); Melgar, 236 S.W.3d at 306–07.  A
pertinent trait is “one that relates to a trait involved in the offense charged
or a defense raised.”  Melgar, 236 S.W.3d at 307.  Thus, in a
prosecution for a crime of violence, the defendant’s character for being
peaceful is pertinent because evidence of peaceful character makes it less
likely that the defendant committed the crime.  Id.  In a murder case,
the accused’s reputation for peacefulness, or nonaggressive behavior, is the
appropriate inquiry.  Wheeler v. State, 67 S.W.3d 879, 882 n.2 (Tex. Crim.
App. 2002); Melgar, 236 S.W.3d at 307.  This type of evidence can be
elicited via opinion or reputation testimony, or both.  Tex. R. Evid. 405(a); Melgar,
236 S.W.3d at 308.

Here,
appellant was accused of murder, and he sought to introduce evidence of his
nonviolent character through a friend who had known him for almost thirty
years.  Because appellant was entitled to elicit such testimony, the trial
court abused its discretion by excluding it.[6]  See Tex. R. Evid.
404(a)(1), 405(a); Melgar, 236 S.W.3d at 308.  Because we must reverse
and remand the case because of our disposition of appellant’s first point, we
need not perform a harm analysis.[7]  See Tex. R. App.
P. 47.1.  We sustain appellant’s fifth point.[8]

Exclusion of Testimony Suggesting Dave
Castello Subject to Influence

In his eighth point, appellant claims that
the trial court abused its discretion by refusing to allow him to introduce
evidence that Dave was subject to having been influenced in his testimony by
his arrest for family violence.

Dave
had admitted, and the jury heard, that he had not originally told the police after
the shooting about seeing Keith and Amy openly kissing at the party.  But he
said that he did not do so then because he did not want to “put [his] friends’
dirty laundry out there.”  He told appellant’s counsel that he had met with the
prior prosecutor on the case about a year before trial but he did not know the
specific date.  Appellant’s counsel then asked, “That’s when you got arrested
for a felony offense, family violence and having previously been convicted of
family violence?”  The State asked to approach the bench; after a brief
conference, the trial court allowed appellant and the State to question Dave on
voir dire.

Appellant’s
counsel asked Dave on voir dire whether he had “decided that [he] needed to
tell the police about all of this stuff” that he had seen between Keith and Amy
around the same time he was arrested for family violence.  Dave answered,
“That’s the first time I was contacted by any of the police.  I kept waiting
for -- why it was taking so long.”  He also said his talking to the prior
prosecutor was not related to the arrest.  The prosecutor at trial asked Dave whether
the State had offered him any kind of deal in exchange for his testimony; he
said no and that his arrest had nothing to do with appellant’s case.  He also
said that his family violence case was dismissed.  The State objected to the
admission of the testimony under rules 608 and 609.

The
following exchange occurred:

THE COURT:  Well, I
don’t know what [appellant’s counsel] may know, but the jury has heard that he
has been arrested.  We can do it one of two ways.  We can come back in and I
can give them an instruction to disregard, or we can do exactly the same thing
we just did in the presence of the jury, because either way, I mean, it’s going
to establish one way or the other that --

 

[THE STATE]:  That he
got arrested.

 

THE COURT:  He got
arrested, so it’s whichever way y’all want to do.

 

The problem I’m
trying to negotiate with this is the one person that the State may want to --
need to rebut this is laying in a hospital bed right now dying.

 

[THE STATE]:  And
that would be [the prior prosecutor assigned to the case and to whom Dave had
originally talked].

 

THE COURT:  Exactly. 
And I’m a little concerned about putting the State in a position now of not being
able to rebut that.  Is there any indication as to who the prosecutor was that
dismissed the case?

 

[APPELLANT’S COUNSEL]: 
It’s -- I object.  It’s what’s in his mind, it’s not what’s in the prosecutor’s
mind or anybody else’s mind.  It’s whether or not he feels some need to tailor
his testimony in a particular way.

 

THE COURT:  Well, if
that’s the case, he’s already said, I got no benefit out of it.

 

[APPELLANT’S COUNSEL]: 
And they’re entitled to ask him those questions in the presence of the jury
about it if they want to do it.

 

[THE STATE]:  That
case was no billed by the grand jury, Judge.

 

. . . .

 

THE COURT: . . .

 

The jury has already
heard that he was arrested on August -- sometime in August of 2009.  I’m not
going to let you go any further.

 

. . . .

 

[THE STATE]:  We’d
ask the Court to instruct the jury to disregard the last question and answer.

 

THE COURT:  Denied.

 

Appellant
contends that Dave’s testimony should have been admitted before the jury
because it shows a motive for testifying in such a way that would “curry favor”
with the State.  According to appellant, the charges against Dave provide a
“logical impetus” for his suddenly remembering in his discussions with the
prior prosecutor that he had seen Keith and Amy kissing that night when he did
not initially give those facts to the police.

The
possible animus, motive, or ill will of a prosecution witness who testifies
against the defendant is never a collateral or irrelevant inquiry, and the
defendant is entitled, subject to reasonable restrictions, to show any relevant
fact that might tend to establish ill feeling, bias, motive, interest, or
animus on the part of any witness testifying against him.  Billodeau v.
State, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009).  “Nonetheless, the
trial judge retains wide latitude to impose reasonable limits on such
cross-examination ‘based on concerns about, among other things, harassment,
prejudice, confusion of the issues, the witness’s safety, or interrogation that
is repetitive or only marginally relevant.’”  Irby v. State, 327 S.W.3d
138, 145 (Tex. Crim. App. 2010), cert. denied, 131 S. Ct. 904 (2011)
(quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431,
1435 (1986)).  Thus, unless the inquiry is addressing an issue that relates to
the charged offense or the credibility of the witness, “allowing a party to
delve into the issue beyond the limits of cross[-]examination wastes time and
confuses the issues.”  Hayden v. State, 296 S.W.3d 549, 554 (Tex. Crim. App.
2009); Walker v. State, 300 S.W.3d 836, 845 (Tex. App.––Fort Worth 2009,
pet. ref’d).  A trial court has the discretion to limit testimony that may
confuse the issues or be only marginally relevant.  Walker, 300 S.W.3d
at 845.  Accordingly, a trial court abuses its discretion when it denies a
defendant the opportunity “to show a prototypical form of bias on the part of
the witness” through cross-examination.  Id. at 845 (quoting Felan v.
State, 44 S.W.3d 249, 254 (Tex. App.––Fort Worth 2001, pet. ref’d)).

To
cross-examine a witness about pending charges or a similar “vulnerable
relationship” with the State, a proponent must show a logical relationship
between the charges and the witness’s potential bias or prejudice.  Irby,
327 S.W.3d at 147–49.

Here,
appellant was attempting to show that Dave had a motive to testify favorably for
the State, either because he was attempting to ingratiate himself with the prior
prosecutor assigned to the case, who had interviewed Dave around the time he
was arrested for family violence (and was then unable to later change his
story), or because he did so in exchange for the dismissal of his charges.  Dave
testified on voir dire that the prosecutors on the two cases were not the same;
he also testified that he did not have a deal with the State to give favorable
testimony.  During the discussion outside the jury’s presence, the prosecutor
informed the judge that the case had been no-billed by the grand jury; thus, it
seems unlikely that Dave would have testified untruthfully in favor of the
State for that reason.  Moreover, the jury had already heard appellant’s
counsel question whether Dave had first come forward with the detail of Keith
and Amy kissing around the same time as his family violence arrest, and the
trial court denied the State’s request for an instruction to disregard.  Thus, we
conclude and hold that appellant failed to show the required logical
relationship between the family violence charge and his testimony and that the
trial court did not abuse its discretion by refusing to allow appellant to
further question Dave about the connection between his arrest and subsequent
testimony in this case.  See id.; Gilmore v. State, 323 S.W.3d
250, 265–66 (Tex. App.––Texarkana 2010, pet. ref’d).  We overrule appellant’s
eighth point.

Failure
to Charge on Criminally Negligent Homicide

In
his ninth point, appellant contends that the trial court erred by failing to
include an instruction on criminally negligent homicide in the jury charge.  While
discussing the jury charge at trial, appellant’s counsel stated, “I think the
conduct in the case of [appellant] testifying that he pointed a loaded firearm
in the direction of the victim . . . raises that issue, and so we request
criminally negligent homicide.”  The trial court denied the request.

We
use a two-step analysis to determine whether an appellant was entitled to a
lesser-included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73
(Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser
offense must come within article 37.09 of the code of criminal procedure.  Tex.
Code Crim. Proc. Ann. art. 37.09 (West 2006); Moore v. State, 969 S.W.2d
4, 8 (Tex. Crim. App. 1998).  Second, some evidence must exist in the record
that would permit a jury to rationally find that if the appellant is guilty, he
is guilty only of the lesser offense.  Hall, 225 S.W.3d at 536; Salinas
v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672–73.  The evidence must be evaluated in the context of the entire
record.  Moore, 969 S.W.2d at 8.  There must be some evidence from which
a rational jury could acquit the appellant of the greater offense while
convicting him of the lesser-included offense.  Id.  The court may not
consider whether the evidence is credible, controverted, or in conflict with
other evidence.  Id.  Anything more than a scintilla of evidence may be
sufficient to entitle a defendant to a lesser charge.  Hall, 225 S.W.3d
at 536.

Criminally
negligent homicide is a lesser-included offense of murder.  Thomas v. State,
699 S.W.2d 845, 847 (Tex. Crim. App. 1985); Torres v. State, 343 S.W.3d
297, 305 (Tex. App.––Eastland 2011, pet. ref’d).  Here, appellant testified
that the gun discharged accidentally.  Accidental discharge alone, however,
does not raise the issue of criminally negligent homicide.  Thomas, 699
S.W.2d at 850; Torres, 343 S.W.3d at 305.  Thus, we must examine the facts
and circumstances to determine if appellant was unaware of the risk created by
his conduct.  Thomas, 699 S.W.2d at 850; Torres, 343 S.W.3d at
305.

Appellant
testified that he was in the garage with Amy when he saw Keith “coming at”
him.  Keith was two to four feet away from them, and he scared appellant. 
Appellant said as soon as he saw Keith out of the corner of his eye, he
flinched and the gun went off.  He testified that he did not intend to shoot at
or even point the gun at Keith, but he must have pointed it at Keith because
when the gun went off, Keith was hit.  On cross-examination, appellant
testified that everything happened so quickly, that when he first saw Keith he
was close to him, and that he just reacted when he saw Keith out of the corner
of his eye.  According to appellant, Keith must have seen Amy because he was
walking toward her.  Appellant had shot the nine-millimeter gun in the past and
said the trigger pull was not heavy to him because “[i]t’s the only thing I’ve
ever known.”  Appellant did admit, however, that he intentionally brought the
gun outside.

The
State points to evidence that appellant had owned the gun for twenty years,
that he owned three guns and kept trigger locks on all of them, that he kept
one round in the chamber of the gun he used that night for home protection, and
that when he took out the gun that night, he had to retrieve the trigger key
from the nightstand and unlock the trigger lock, as evidence that appellant was
aware of the risk of injury or death that could occur as a result of his
conduct.  The evidence shows that appellant knew the gun was loaded, bypassed
the safety constraints he usually used in storing the gun, and was familiar
with the gun’s operation.  Thus, the evidence does not raise a question as to
whether appellant was unaware of the risk created by his conduct in carrying a
loaded, unlocked firearm outside of his house while under the influence of
alcohol and after a heated, physical altercation with a man who had made
physical advances toward his wife; the evidence does not therefore show that if
appellant was guilty, he was guilty only of criminally negligent homicide. 
Accordingly, we conclude and hold that the trial court did not err by denying
appellant’s timely requested instruction.  See Thomas, 699 S.W.2d
at 852; Torres, 343 S.W.3d at 305–06.  We overrule appellant’s ninth
point.

Conclusion

Having sustained appellant’s first and
dispositive point, we reverse the trial court’s judgment and remand this case
to the trial court for a new trial.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  August 9, 2012









[1]U.S. Const. amend. XIV;
Tex. Const. art. I, § 19; Giglio v. United States, 405 U.S. 150, 92 S. Ct.
763 (1972); Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); Napue
v. Illinois, 360 U.S. 264, 79 S. Ct. 1173 (1959); Pyle v. Kansas,
317 U.S. 213, 63 S. Ct. 177 (1942); Mooney v. Holohan, 294 U.S. 103, 55
S. Ct. 340 (1935).





[2]It appears that the trial
court was asked to accommodate only three additional people in the courtroom. 
Given that the state and local governments have an obligation to provide
adequate facilities to the judicial branch so that it may properly carry out
its constitutionally-created functions, the trial court could have properly
exercised its inherent authority to seek out an alternative location or
arrangement of space that would have accommodated the presence of only three
additional persons in the courtroom.  See, e.g., Tex. Const. art.
II, § 1, art. V, §§ 7, 8; Vondy v. Commissioners Court of Uvalde Cnty.,
620 S.W.2d 104, 110 (Tex. 1981) (“The legislative branch of this state has the
duty to provide the judiciary with the funds necessary for the judicial branch
to function adequately.”).





[3]We ordinarily abate when a
trial court’s findings are insufficient; however, higher courts have held that
when a trial court’s findings on trial closure are insufficient, the remedy is
a new trial.  See Presley, 130 S. Ct. at 725; Lilly, 365 S.W.3d
at 329, 333 (“Generic findings will necessarily invalidate a
closure . . . .”); see also Tex. R. App. P. 44.4
(providing that court of appeals must direct trial court to correct any error
that prohibits the proper presentation of a case in the court of appeals).  In Steadman,
the State filed a presubmission motion to abate for more detailed findings,
which the court of appeals granted.  360 S.W.3d at 501.  Despite the trial
court’s detailed additional findings––which included that the space was narrow,
the trial was emotionally charged, and having family members of the defendant
so close to the panel would make the panel members uncomfortable and heighten
security concerns––the court of criminal appeals held that they were
insufficient to justify excluding the family members from the courtroom.  Id.
at 501–02, 510–11.  Accordingly, we do not believe that abatement is the proper
remedy here.  See, e.g., Lilly, 365 S.W.3d at 329, 333.





[4]The State contends that
appellant failed to challenge the trial court’s 403 ruling on appeal; however, the
argument is fairly included as a subsidiary issue in appellant’s second through
fourth points.  See Tex. R. App. P. 38.1(f); Davis v. State, 268
S.W.3d 683, 695 n.1 (Tex. App.––Fort Worth 2008, pet. ref’d).





[5]The State contends that
appellant failed to preserve this argument for appeal by failing to give the
trial court a reason he wanted the evidence admitted in response to the State’s
objection.  But the witness’s statement, and the trial court’s ruling on the
State’s objection, were sufficient to preserve the point for review.  See
Tex. R. App. P. 33.1(c); Edwards v. State, 178 S.W.3d 139, 146 (Tex.
App.––Houston [1st Dist.] 2005, no pet.).





[6]The State contends that
appellant’s questions asked for answers that would necessarily include specific
instances of conduct; however, the “[h]ave you known” questions were broad and
could therefore have encompassed the witness’s opinion and knowledge of
appellant’s reputation, both of which are admissible under rule 405(a).  Tex.
R. Evid. 405(a); see Johnson v. State, Nos. 05-93-01960-CR,
05-93-01961-CR, 1997 WL 428047, at *4 (Tex. App.––Dallas July 31, 1997, no
pet.) (not designated for publication).





[7]Because we need not
consider harm, it is irrelevant that appellant was able to elicit from Dave
that Dave had never known him to be violent.  See Valle v. State, 109
S.W.3d 500, 509 (Tex. Crim. App. 2003) (“An error [if any] in the admission of
evidence is cured where the same evidence comes in elsewhere without
objection.”).





[8]Moreover, because the
evidence was admissible under evidentiary rules, we need not address
appellant’s sixth and seventh points, arguing that it was admissible for other
reasons.  See Tex. R. App. P. 47.1.